## BARNET GROSS *vs.* LOUIS REINERS.

Third Judicial District, Bridgeport, April Term, 1924.
WHEELER, C. J., BEACH, CURTIS, KEELER and HAINES, Js.

The plaintiff sued to recover a balance of $713 upon the purchase price of a stock of groceries, valued and appraised at $1,713. The defendant, who had taken the goods and mingled them with others of his own purchase for a period of sixteen months in the transaction of a grocery business, counterclaimed for damages on the ground that the goods were not as represented, and introduced evidence from which the jury might have fixed his damages at not more than $600. *Held:*—

1. That the defendant could not be said to have made any serious and effective effort to rescind the sale and avail himself of the remedies provided in §§ 4735, 4719 of the General Statutes.
2. That the trial court properly set aside a verdict of $150 for the defendant, since, even upon his own evidence, he was only entitled to a credit of $600 upon the balance of $713 due the plaintiff.
3. That whether the defendant's claim be viewed as one for fraud or for breach of warranty, the measure of damages would be the same.

Argued April 9th—decided June 2d, 1924.

ACTION to recover an alleged balance due from the defendant upon his written agreement to buy out the plaintiff's grocery business, including the stock of goods, fixtures and lease of the store, brought to the Court of Common Pleas in Fairfield County and tried to the jury before *Booth, J.;* verdict for the defendant to recover $150 upon his counterclaim, which the court

set aside as against the evidence, and from this decision the defendant appealed. *No error.*

*Frank L. Wilder,* for the appellant (defendant).

*Herman N. Horwitz,* for the appellee (plaintiff).

KEELER, J. This was an action to recover the balance due upon a written contract of sale by the plaintiff to the defendant, wherein the latter agreed to purchase from the plaintiff the stock, fixtures, good-will and lease of a certain grocery business then conducted by the latter. The contract provided that $400 should be paid for the fixtures, good-will and lease, and that the stock of goods should be taken over by defendant at a valuation to be made by two appraisers, one to be chosen by each of the parties to the contract. The defendant paid $400 to plaintiff for the fixtures and $1,000 on account of the stock, but made no further payments. The plaintiff transferred the stock, fixtures and lease to defendant who went into possession of the same, and has made no further payment.

These facts are uncontradicted, but defendant in his answer alleges that plaintiff represented that the stock of groceries was in first-class, wholesome, marketable condition, and could readily be sold at regular prices in the usual way, and that defendant executed the contract of purchase, and paid the sum of $1,400 in reliance upon said representations, which were in fact false; that defendant upon learning of the falsity of these representations repudiated the sale and attempted to return to the plaintiff the store and stock therein, and demanded the return of the part of the consideration of the contract which had been paid, but the plaintiff refused to accept the store or return any part of the consideration; that plaintiff had already received more

than the reasonable value of the marketable portion of the stock remaining in defendant's hands, after plaintiff's refusal to accept return of the store and stock.

The above allegations of the answer were also made part of a counterclaim, in which it is further alleged that the marketable value of the stock of goods did not exceed $700, and that the plaintiff owed defendant the difference between that sum and the sum already paid to plaintiff. Upon the allegations of the answer and counterclaim, the parties were at issue.

It appeared in the trial of the case that defendant had remained in possession of the store and conducted business therein up to and including the time of trial, which began November 7th, 1923, and that he took possession of the store and contents Sunday, June 25th, 1922. The appraisers fixed the value of the stock, as appears by their appraisal (Exhibit C), at $1,713.32.

The jury returned a verdict for $150 in favor of the defendant upon his counterclaim, which, upon motion, the court set aside as unsupported by the evidence, and ordered a new trial, and this action of the court is made the sole ground of appeal by defendant.

In setting aside the verdict the court filed a memorandum as follows: "The jury were told that, if they found fraud as claimed by the defendant, they should assess his damages at the difference between the actual value of the goods at the time of the sale, and what they would have been worth had they been as represented.

"The evidence on this feature was confined to the defendant's witnesses, Hamlin and Briner, and does not lay the foundation for more than $600 damages as a result of the fraud.

"The defendant, having affirmed the sale by retaining the goods, was entitled to offset this damage against the balance of the contract price. This should,

therefore, have resulted in a verdict for the plaintiff of at least $113.30 and interest, but instead of that the jury apparently assessed damages at $863.30, which was not justified by the evidence.

"Had the original price been paid in full and this been one for damages for the fraud, resulting in a verdict for the above amount, the remedy might be obtained by permitting a *remittitur* of the excess, namely $263.30, but as such a course would result in substituting a verdict for the plaintiff in place of one for the defendant, which it is exceedingly doubtful that the court has power to do, the verdict may be set aside as a whole and a new trial granted."

This view of the trial court is borne out by the testimony in the case as reported to this court. Subtracting the sum of $1,000 already paid on account of $1,713.32, the amount of the appraisal, we find the difference to be $713.32. The utmost amount claimed by way of damage was fixed in the plaintiff's testimony at $600. If we therefore subtract this sum, a remainder of $113.32 results, which would have been the proper amount of a plaintiff's verdict. An analysis of the same figures justifies the conclusions arrived at in the last paragraph of the memorandum of decision above quoted.

The defendant, however, claims that "the court set aside the verdict because the evidence showed that there were only damaged goods to the amount of $600, but the evidence also showed that the prices in the inventory were far below the real value of the goods had they been worth what they were represented and had they answered the representation"; and also that "the goods were represented" by the defendant "as 'first-class marketable goods.' The goods were marked below the first-class market price by the appraisers, $600 worth at inventory prices were absolutely worth-

less, others nearly so. The court in its memorandum of decision, totally disregarded the testimony that a large amount of goods were not inventoried as 'first-class goods' as represented. The difference between the goods as represented and the inventory price easily supplies the difference of $263.30, which the court says we failed to prove." There is nothing in the evidence which would have justified the jury in allowing more than $600 damages on account of the lessened value of the stock sold. Any attempt to add to this figure could only result in conjecture of the vaguest sort. Furthermore, although it appears from the evidence that a considerable part of the merchandise was inventoried by the appraisers at cut prices, as the same was not first-class goods, still by this process the defendant had the benefit of a proper deduction in fixing the amount to be charged him for the stock, and cannot again claim the reduced value by way of damages. There was no attempt to impeach the award of the appraisers, and no foundation laid for such an attempt in the pleadings.

There is a further claim of an offer to return the goods made by defendant to plaintiff and a rescission of the sale, which, under the provision of General Statutes, § 4735 (The Sales Act), would have resulted in the recovery by the defendant of all that he had paid in case of the plaintiff's acceptance of a return of the goods by the defendant, or in case of nonacceptance, the defendant could have pursued the same remedies provided for an unpaid seller in § 4719. An examination of the evidence shows no serious and effective offer to return the goods, which were in fact retained by defendant, as he testifies, and mingled with other stock purchased by him during a period of over sixteen months, in the transaction of a grocery business which defendant testifies that he had conducted without

loss up to about four months prior to the trial of the action. If he had intended to sell the goods, under § 4719, in satisfaction of a lien acquired under § 4735, by reason of a refusal by plaintiff to accept return of the goods, this was not the method to effect that result.

Perusal of the evidence shows that the cause was tried upon the theory of fraud on the part of plaintiff, with some attempt to finally claim breach of warranty. The measure of damages would have been the same in either case, and the jury upon either claim, having found for the defendant, could have assessed no greater damage in his favor than $600, either upon the answer by way of recoupment, or upon the counterclaim.

There is no error.

In this opinion the other judges concurred.